R. B. BEESON v. GEORGE J. DAY and Others.

November 17, 1899.

Nos. 11,758—(101).

**Bond—Foreclosure of Mortgage—Bank—Findings Sustained by Evidence.**

*Held*, that the findings of fact and decision of the trial court are sustained by the evidence.

Action in the district court for Nobles county against George J. Day, Martha E. Day, his wife, and Peter Thompson to foreclose a mortgage executed by defendants Day to secure a bond of guaranty executed by defendant George J. Day. The case was tried before P. E. Brown, J., who found the facts as stated in the opinion, and as conclusions of law found that there was due on the bond and mortgage $2,372.17, with interest from September 5, 1888, and that plaintiff was entitled to judgment of foreclosure. From a judgment entered pursuant to the findings, defendant Thompson appealed. Affirmed.

*Daniel Rohrer*, for appellant.

*Geo. W. Wilson & Son*, for respondent.

START, C. J.

The facts of this case as found by the trial court are these: In the year 1886 the defendant George J. Day contemplated establishing a national bank at Worthington, this state. For the purpose of inducing a syndicate, which was represented by George S. Capelle, as trustee, to subscribe for 350 shares of the capital stock of the proposed bank, he executed to Capelle, as such trustee, his bond in the sum of $35,000, the condition of which, after reciting that the syndicate had subscribed for the amount of stock named, read as follows:

"I, Geo. J. Day, do hereby guaranty and insure to the holders of said stock annual dividends or returns upon said stock at the rate of 10 per cent. per annum; and, when the said stock can be disposed of and sold for $125 per share, then this bond shall be void and of no effect, and otherwise shall remain in full force."

Day and wife, to secure the performance of the condition of the bond, executed to Capelle a mortgage on the real estate described in the complaint in this action, which was then owned by Day. The mortgage was duly recorded in the proper county July 24, 1886. The syndicate subscribed and paid for the 350 shares of the stock, and 150 shares thereof were subscribed by other parties, and thereafter, and on October 1, 1886, the bank commenced business as the First National Bank of Worthington. The defendant Day was elected cashier of the bank, and so remained while the bank existed,

but there was no agreement between him and Capelle or any of the beneficiaries in the bond that he should be made and kept cashier of the bank, and have the management or control of its affairs.

The defendant Peter Thompson, on July 30, 1888, commenced an action against Day and others to establish and enforce a lien in his favor upon the land described in the complaint and other lands. Due notice of the pendency of this action was recorded, and such proceedings were had therein that judgment was entered in favor of Thompson establishing a lien thereon in his favor as of February 13, 1888. The bank paid to its stockholders dividends of 10 per cent. per annum to January 1, 1888.

Prior to September 5, 1888, it was insolvent, and on that day it went into liquidation, and George S. Capelle, George W. Bush,— two of the members of the syndicate,—and the defendant Thompson were duly appointed commissioners in liquidation. Thereafter the commissioners, together with all of the stockholders of the bank, and the beneficiaries in the bond and mortgage securing it, entered upon negotiations with Day for a settlement of all the affairs of the bank and the alleged liability of Day on his bond, in which it was claimed that he was indebted to the bank and to the syndicate on his bond, and to certain other stockholders of the bank. Pending the negotiations, and before any final settlement was made, Thompson withdrew therefrom, and refused to longer act as a commissioner in liquidation, and advised all parties that he should insist upon all his rights in his action against Day, then pending. The remaining parties to the negotiations proceeded, and made a settlement with Day, whereby he agreed to convey the premises described in the complaint, and turn over to the commissioners in liquidation, the trustee of the syndicate, and the stockholders a large amount of money, property, and choses in action in full settlement of all claims held by them or either of them against him. The conditions of the settlement were performed by Day. The land in question was, on November 15, 1889, conveyed by Day and his wife, by warranty deed, to George W. Bush, at the request of Capelle, instead of himself, in order to preserve the lien of the mortgage to him as trustee to secure Day's bond, and to prevent a merger of the mortgage, and thereby partially protect the interests of the parties in case Thomp-

son's action against Day was finally decided in favor of the former. Except as here stated, Day never paid anything on his bond and mortgage to Capelle.

Thereafter Capelle duly foreclosed by action his mortgage against Day, and he became the purchaser of the mortgaged premises at the sale on the judgment entered in the action on May 15, 1893. The sale was confirmed, and no redemption was made. Thompson was not a party to the foreclosure action. Afterwards Capelle and Bush conveyed the land to the plaintiff herein, and thereafter, and on July 6, 1896, the bond and mortgage of Day to Capelle were duly assigned, without merger, to the plaintiff. There was due on this bond and mortgage, September 5, 1888, when the bank went into liquidation, the sum of $2,372.17, no part of which has ever been paid.

Upon the facts found the trial court entered judgment of foreclosure and sale to pay the amount due on the bond, from which the defendant Thompson appealed.

If the findings of fact by the trial court are sustained by the evidence, its judgment is right. The defendant, however, claims that the finding of fact to the effect that the bond and mortgage securing it were given for the purpose of inducing the syndicate to subscribe for stock, as stated therein, and that they were not given in consideration that Day should be made and kept cashier of the bank, is not sustained by the evidence. On the contrary, he insists that the evidence demanded a finding that the bond and mortgage were coupled with an agreement between Day and the syndicate that the latter, if he made the bond and mortgage, should have the management of the business of the bank as cashier, and that, therefore, they are against public policy, and void. Whether this conclusion would be correct if the premises were true, we need not discuss or decide, for we are of the opinion that the finding of the trial court is sustained by the evidence. The only evidence on this point, aside from the bond itself, was that of George J. Day, which was substantially this:

"Q. You testified that this indemnity bond was made to Capelle, as trustee, to induce the persons named in it to subscribe this 350 shares. Was that so? A. Yes, the terms of the 'ndemnity bond

were agreed upon by Bush and Capelle while they were here, and afterwards made and sent to them. Q. Did you have any talk with Capelle about being cashier? A. I did. Q. What was said between you about it in connection with the bond? A. I said that, if I was to be responsible for the investments and dividends, I should want to have the management of the business of the bank. They said that would be all right; that would be nothing but fair. Q. This conversation between you and them about your being cashier was made in connection with the agreement to guaranty the dividends? A. It was."

This evidence does not require, as a matter of law, a finding to the effect claimed by the defendant. It is a fair inference from the evidence that Day expected that some pecuniary advantage would accrue to him by the establishment of the bank of which he was the promoter, and to induce the syndicate to embark in the enterprise he was willing to and did guaranty to its members a return on their investment of 10 per cent. per annum in the form of dividends. But there was no contract by the bank, or its directors, or its proposed stockholders that Day should be made and kept the cashier of the bank, without reference to his capacity or fitness for the place, so as to enable him to distribute to the stockholders 10 per cent. annual dividends, whether earned or not. The contract and purpose of the parties appear on the face of the bond, and they are as legitimate as would be the guaranty of a specified dividend made by a stockholder to a would-be purchaser to induce him to purchase the stock. The finding of the trial court in question is supported by the evidence, and the bond and mortgage are valid.

The defendant further claims that the finding that the bond and mortgage have not been paid or satisfied is not sustained by the evidence, but that, on the contrary, the evidence shows that the settlement had with Day was accepted in full satisfaction and payment of the bond and mortgage.

The evidence shows that the settlement of the parties was upon the basis that Day had a good title to the land he was to convey in part payment of the amount agreed upon, subject only to two mortgages, not here material. The lien of Thompson on the land was subordinate to that of the mortgage to the syndicate. If he had consented to release his lien, there would have been no occasion for

keeping the first mortgage on foot; but he refused to do so, and withdrew from the settlement. Consequently it was necessary to preserve the lien of the mortgage as against him, and the evidence amply sustains the conclusion that it was the intention of all of the parties to the settlement that Capelle, as trustee of the mortgage, should remain in the same position as to enforcing the mortgage against the land as he was before the settlement, and that, for the purpose of effectuating this intention, the land was conveyed to Bush to prevent a merger of the mortgage. Capelle then proceeded to foreclose the mortgage, and, after the expiration of the time allowed for redemption, he and Bush conveyed the land to the plaintiff. But for some reason, not disclosed by the record, Thompson was not made a party to the action to foreclose the mortgage; hence as to him the mortgage had never been foreclosed; and Capelle assigned it to the plaintiff, who brought this action against Thompson to foreclose the mortgage. We are of the opinion that the evidence sustains the finding of the trial court that the bond and mortgage have not been paid or satisfied as against Thompson.

The only other assignment of error meriting special consideration is that the court erred in finding that there was due on the bond and mortgage, on September 5, 1888, the day the bank ceased to exist except for purposes of liquidation, the sum of $2,372.17. Clearly, the defendant cannot complain of the finding, for the trial court seems to have made it upon the basis that all future liability on the bond was extinguished when the bank ceased to exist. The amount found due on the bond was simply the interest on the $35,-000 from the date of the last dividend paid by the bank to the day it closed. It is immaterial whether this amount be designated as a dividend or interest, for in fact it was the guarantied return on the stock investment, which the syndicate were entitled to, by virtue of the bond, whether the bank paid dividends or not. This was the amount past due when the bond and mortgage were assigned to the plaintiff, and it is immaterial whether the stock was assigned to him or not.

Judgment affirmed.